JOHN GRAY AND ROBERT J. GRAY, RESPONDENTS, *v.* THE CENTRAL RAILROAD COMPANY OF NEW JERSEY, APPELLANT.

*Conditional sale — article sold to be satisfactory to purchaser — refusal to receive — Contract — by whom it shall be construed.*

A entered into a contract with B and others, by which they agreed to purchase a steamboat for $15,000, "provided, upon trial, they are satisfied with the soundness of her machinery, boilers, etc." In an action by A to recover damages for a breach of the contract, *held,* that no recovery could be had unless it were shown that the defendants were satisfied with the boat; whether or not they ought to have been satisfied is immaterial. (BRADY, J., dissenting.)

Upon the trial the court left it to the jury to decide what the letters "etc," at the close of the agreement, meant. *Held,* that this was error; that the construction of the contract belonged to the court and not to the jury.

MOTION for a new trial on exceptions ordered to be heard in the first instance at the General Term, after a verdict in favor of the plaintiffs, and appeal from an order denying a motion for a new trial made by the defendant.

The action was brought to recover damages for the breach of a contract alleged to have been made by the defendant for the pur-

chase of a steamboat. The answer denied any agreement and alleged that the defendants had only made an offer to purchase provided they were satisfied with the soundness of the machinery, boilers, etc., of the boat; that they were not satisfied; that the vessel was not sound.

The following paper, signed by the parties to the action, was the basis of the plaintiffs' claim :

" The Central Railroad Company of New Jersey offer to buy the steamboat John Adams from J. & R. I. Gray for the sum of $15,000 cash, provided upon trial they are satisfied with the soundness of her machinery, boilers, etc.; and the said J. & R. I. Gray agree to sell the above boat for the above price.

JOHN TAYLOR JOHNSON, *Pres.*
J. & R. I. GRAY."

On January 9, 1867, the plaintiffs notified the defendants that they would sell the boat on January twenty-second, at twelve o'clock, and would hold them liable for any loss. The boat was sold and was knocked down to the name of H. F. Hamill, though the sale was never consummated.

On April 7, 1867, the plaintiffs sold the boat to Samuel Lapham, of Boston, for $8,000.

There was much evidence on both sides as to the condition of the boat, whether she was or was not sound, and also as to whether, for their refusal to take her, the defendants did or did not assign the reason that she was unsound.

*R. W. De Forest* and *J. E. Parsons*, for the appellant.

*Edw. N. Dickerson*, for the respondents.

DAVIS, P. J.:

There are several questions of minor importance on which a new trial must be ordered in this case. The auction sale was, upon the undisputed evidence given on the part of the plaintiffs, no sale at all, and the court ought to have so ruled, and not have allowed the same to have gone to the consideration of the jury upon the question of damages. Nothing was ever paid upon that sale; no deliv-

ery of the property was made upon it; the plaintiffs remained in possession of the property as they had before done, and there was no sufficient evidence establishing a contract of sale between them and the purchaser at the auction which could have been enforced by either party. The court, upon the facts, ought to have ruled upon the validity of such sale as a question of law, and not have allowed the jury to give it any consideration whatever in estimating the damages. Aside from the auction sale, there was not sufficient evidence in the case to uphold the verdict in respect of the amount of damages. The sale made in the spring following, to the Boston purchaser, at the sum of $8,000, was not sufficient evidence upon the question of value at the time defendants refused to take the boat, because it appeared, by the plaintiffs' own showing, that she had during the interval depreciated in value to a considerable extent. The only evidence on the question of value at the time of the defendant's refusal, was that given by one of the plaintiffs, who swore that he considered her then worth $16,000; which was $1,000 more than the contract-price. If this were so, in the absence of a valid sale at public auction, no verdict beyond nominal damages for the breach of the contract, could have been rendered. Exceptions were taken which raised these questions, and the rulings of the court upon such exceptions seem to us to have been erroneous.

But the more serious question in the case arises upon the form of the instrument upon which the action is brought. It is in these words :

*"December* 17, 1866.

" The Central Railroad Company of New Jersey offer to buy the steamboat John Adams, from J. & R. J. Gray, for the sum of fifteen thousand dollars cash, provided upon trial they are satisfied with the soundness of her machinery boilers etc.; and the said J. & R. J. Gray agree to sell the above boat for the above price.

"JOHN TAYLOR JOHNSTON, *Pres.*
"J. & R. J. GRAY."

If we regard the instrument as any thing more on the part of the appellants than a mere offer to purchase at a stipulated price upon specified conditions, and treat it as an obligatory agreement binding them to purchase on certain conditions, it is then important to

inquire whether, upon the evidence in the case, there was any breach of the agreement shown. The condition of the agreement, treating it as such, is expressed in these words: "Provided, upon trial they are satisfied with the soundness of her machinery, boilers, etc." By this clause the agreement left it entirely for the defendants to determine whether or not they were satisfied. There is no reason in law why parties may not, if they think proper, make agreements of this kind. And in all cases where such agreements have been made, the determination of the party that he is not satisfied, and his refusal to accept and pay for the property, is conclusive and terminates the contract. In *Ellis* v. *Mortimer* (1 B. & P., 257) the plaintiff offered for sale a horse, and agreed to take for him a stipulated price, provided, the defendant, after thirty days' trial, should like the horse. Defendant took the horse for the purpose of trial, but within thirty days returned it, and refused to complete the purchase. It was held that there was no contract unless the defendant at the end of the period liked the horse; or in other words that the contract made him the sole arbiter of that question.

In *McCarren* v. *McNulty* (7 Gray, 139) the plaintiff agreed to make a book-case, in a good, strong, workmanlike manner, to the satisfaction of the president of the young men's society. He showed that the book-case was made according to the agreement in every particular, and asked the court to rule that if the jury were satisfied that the work was done according to the contract and to the reasonable satisfaction of the president, that he should recover. The court ruled that the plaintiff must show that the work was actually satisfactory to, and accepted by, the president of the society, or he could not recover. On appeal, the court said : " It may be that the plaintiff was injudicious in agreeing to work for a compensation, the payment of which was made dependent upon a contingency so hazardous or doubtful as the approval of a party in interest; but of that he was the sole judge. Against the consequences resulting from his own bargain the law can afford no relief.

To the same effect are *Aiken* v. *Hyde* (99 Mass., 183); *Goodrich* v. *Norwich* (43 Ill., 336); *Hunt* v. *Wyman* (100 Mass., 198); *Heron* v. *Davis* (3 Bosw., 336).

We are bound to regard this instrument as expressing precisely what both parties meant, which was nothing more than if the com-

pany on trial of the steamer, were satisfied with the soundness of her machinery, boilers, etc., they would purchase her for $15,000, and in that case the plaintiffs would take that price for her; but if they were not satisfied, there was to be no obligation on the company to take her, and consequently none on the part of the plaintiffs to sell her to them. The trial was made, and there seems to be no conflict whatever in the evidence that the defendants were not satisfied, and so notified the plaintiffs, and refused absolutely to complete the purchase. The attempt is now made to enforce the purchase by submitting to the jury the question whether the defendants ought not to have been satisfied on the trial; or, in other words, to show that the soundness of the machinery, boilers, etc., was such as made the contract obligatory as one of purchase, whether the defendants were satisfied or not. This is a different contract from that which the defendants made and to which the plaintiffs assented.

The court submitted to the jury the question, in substance, whether the declaration on the part of the defendants, that they were not satisfied, was made in good faith, saying to the jury: "The first question for you to consider is, whether or not the defendants were justified in their refusal to take the boat. They were not absolutely and beyond all dispute bound to take the boat — not by the terms of the contract — not bound absolutely and unconditionally to take the boat in any event. But their refusal will only exempt them from liability if it was based upon their dissatisfaction after the trial, with the soundness of her machinery, boilers, etc." And he adds: "After the examination and trial by the defendant's agents, the president stated that Mr. Winants, who was the defendant's engineer, and whom you will remember very well, had reported the boat as unsatisfactory in every respect. "You are to be satisfied, in order to justify the refusal of the defendants, that the boat was unsound in the respects indicated in the contract, and that the defendant's dissatisfaction, from the trial, was based upon such unsoundness. The examination and trial of the boat by the defendants, and her condition, you are to determine from the evidence. You will recall the testimony of the witnesses, and from that you will determine whether or not that boat was unsound. The defendants were not bound to take an unsound boat, and you are to determine from the evidence whether the boat was

unsound. The contract in question enables them to refuse the boat if they were dissatisfied with her on account of any unsoundness in her machinery, boilers, etc." He further says, in another place : " Allow me to ask you, upon this branch of the case, that you will give it a careful consideration, so as to determine the condition of the vessel when that contract for her purchase was made by the defendants."

These portions of the charge were excepted to. Their effect was to put the jury in the position in which the contract put the defendants themselves, and allow the jury to say whether the defendants ought to have been satisfied with the condition of the boat as to her soundness in respect of the machinery, boilers, etc., when it clearly appears that they themselves declared they were not satisfied and would not proceed with the contract.

We think these instructions were erroneous, because based upon a misapprehension of the true legal rights of the parties to the instrument. The evidence in the case tended very strongly to show that the boat was unsound in respect of the subjects mentioned in the contract, and that the verdict upon that question was against the weight of evidence ; but we are not disposed to put the order for a new trial upon that ground.

It was left by the court to the jury to say what the abbreviation, " etc.," at the close of the condition of the agreement, meant. This, also, we think, was error. The form of the condition, as already given, is, " provided, upon trial, they are satisfied with the soundness of her machinery, boilers, etc." If it were difficult to settle what " etc." meant in this connection, the solution of the difficulty belonged to the court as a question of law, and not to the jury as a question of fact. The term used is simply an abbreviation of the words " *et cetera*," which mean " other things ; " and the contract should be read by the court as though it were written, " the soundness of her machinery, boilers and other things." These are not words of restriction, and do not limit the question of soundness to the machinery and boilers, but extend it beyond them. We think the true sense, in this connection, is " other material parts of the boat ; " and that the defendants had a right to refuse to be satisfied, if the boat was unsound in any material and substantial portion of her hull or machinery.

The order denying the motion for new trial must be reversed, and the motion granted, with costs to abide the event.

DANIELS, J., concurred.

BRADY, J.:

The result arrived at may be correct on the whole case, but I do not agree to the proposition that the defendants had the right to declare arbitrarily that they were not satisfied with the soundness of the machinery, etc. Under such a contract as herein shown, if they should have been satisfied, they must be deemed to have unreasonably refused to complete the agreement.

Order denying motion for new trial reversed; motion granted, with costs to abide event.